FILED

2026 Jun-26  PM 03:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| LEONOR REYNA MARTINEZ FLORES, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:25-cv-00884-NAD |
| SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY, et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS

For the reasons stated below, and on the record in the telephonic motion hearing, the court **GRANTS** the "Motion To Dismiss" (Doc. 25) filed by Defendants—i.e., the Secretary of the United States Department of Homeland Security (DHS), the Director of the United States Citizenship and Immigration Services (USCIS), and the Attorney General of the United States.[1]  *See* Doc. 1 (complaint); Doc. 27 (opposition); Doc. 24 (briefing schedule); Doc. 31 (order setting telephonic motion hearing); minute entry, entered: 04/30/2026 (telephonic motion hearing).  Separately, the court will enter final judgment.

---

[1] The complaint names the following individuals as defendants, all in their official capacities:  Kristi Noem, the former Secretary of DHS; Kika Scott, the former Director of USCIS; and Pam Bondi, the former U.S. Attorney General.

1

## BACKGROUND

### A.    Factual background

In "Plaintiffs' Original Complaint For Writ In The Nature Of Mandamus And Violation Of The Administrative Procedure Act," Plaintiffs Leonor Reyna Martinez Flores and Avismael Espinoza Baldovinos allege the following:  Plaintiffs Martinez Flores and Baldovinos are citizens of Mexico who have been residing in the United States since 1996.  Doc. 1 at 2, 12.  Martinez Flores is the victim of qualifying criminal activity that makes her eligible to file Form I-198, a petition for U Nonimmigrant Status (also known as a U Visa).  Doc. 1 at 2, 4, 15.  Baldovinos is Martinez Flores' spouse, and consequently is eligible to petition for a derivative U Visa.  Doc. 1 at 2, 4–5.

Martinez Flores filed a Form I-198 petition for a U Visa on June 24, 2019, and her petition has been pending for almost 7 years.  Doc. 1 at 3, 15–16.  On August 7, 2019, Martinez Flores appeared for a required biometrics appointment in support of her petition.  Doc. 1 at 16.

Baldovinos filed a petition for a U Visa on September 19, 2023, and his derivative petition has been pending for more than 2 years.  Doc. 1 at 3, 16.  On January 11, 2024, Baldovinos appeared for his biometrics appointment.  Doc. 1 at 16.

On December 14, 2023, Martinez Flores received a "bona fide determination"

2

(BFD) and notification that she was eligible for an "employment authorization document" (EAD) and deferred action.  Doc. 1 at 4 n.3, 16.

On October 21, 2024, Baldovinos received a BFD and notification that he was eligible for an EAD and deferred action.  Doc. 1 at 4 n.3, 16.

It is undisputed that both Martinez Flores and Baldovinos now have EADs and deferred action.  Doc. 27 at 4.

But Plaintiffs have not received final adjudication of their petitions for U Visas.  Doc. 1 at 16.

## B.    Procedural background

On June 9, 2025, Plaintiffs filed their complaint, seeking "a writ of mandamus to compel" USCIS "to fulfill its long-standing legal obligations under the Immigration and Nationality Act [INA], the Administrative Procedure Act [APA] and the Due Process Clause."  Doc. 1 at 2–3.

In their complaint, Plaintiffs allege that Defendants unreasonably delayed implementing required regulations for the U Visa program.  Doc. 1 at 8.  Plaintiffs also allege that USCIS unreasonably delayed implementing the regulations for the BFD process and continues to unreasonably delay administering the entire U Visa petition process.  Doc. 1 at 11–12.

Plaintiffs allege two claims for relief.  Doc. 1.  In Count 1, Plaintiffs allege a violation of the APA based on Defendants' failure to adjudicate Plaintiffs' petitions

3

for U Visas or, in the alternative, Defendants' failure to place Plaintiffs on the regulatory "waitlist" for adjudication of their petitions.  Doc. 1 at 17.  Plaintiffs allege that, under 5 U.S.C. § 555(b), Defendants have a duty either to adjudicate their petitions for U Visas in a reasonable amount of time, or to place Plaintiffs on the regulatory waitlist for adjudication.  Doc. 1 at 17.

Second, Plaintiffs allege a violation of the Due Process Clause (Count 2) based on Defendants' failure to promulgate the regulations required for implementation of the U Visa program.  Doc. 1 at 19–21.

With respect to relief, Plaintiffs request that the court "enter an order mandating a time certain to adjudicate Plaintiffs' respective Petitions or, in the alternative, place [Plaintiffs] on the U visa waitlist for prioritization of their respective Petitions during the next fiscal year."  Doc. 1 at 21.  Plaintiffs request further that the court order Defendants to adjudicate their petitions for U Visas immediately or prioritize their adjudication when the U Visa cap resets at the start of the new fiscal year.  Doc. 1 at 21.  Plaintiffs also seek related declaratory relief and additional immigration relief, as well as attorneys' fees.  Doc. 1 at 22.

On January 30, 2026, Defendants filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Doc. 25.  Defendants argue that the court should dismiss Plaintiffs' complaint because Plaintiffs' claims are moot, Plaintiffs lack standing, the court lacks jurisdiction, Plaintiffs have not alleged

any unreasonable delay, and Plaintiffs cannot state a due process claim as the filing of a petition for a U Visa does not create any cognizable liberty or property interest. Doc. 25 at 1–2, 8–18.

On March 2, 2026, Plaintiffs filed their opposition to the motion to dismiss. Doc. 27.   Plaintiffs argue that the court has jurisdiction, and that they "seek only timely adjudication and proper placement on the waiting list."   Doc. 27 at 1. Plaintiffs argue that their claims are not moot because their petitions for U Visas have not been adjudicated and because they seek placement on the regulatory waitlist for adjudication of their petitions.  Doc. 27 at 6.  Plaintiffs also argue that judicial review of the alleged unreasonable delay in adjudicating their petitions for U Visas is appropriate, and that the processing time for U Visas is unreasonable.   Doc. 27 at 8–11.

Defendants did not file a reply.  And the parties consented to magistrate judge jurisdiction.  Doc. 29; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

The court then held a telephonic motion hearing on the motion to dismiss.  *See* Doc. 31 (order setting telephonic motion hearing); minute entry, entered: 04/30/2026 (telephonic motion hearing).

### C.   Legal background, the U Visa program

In October 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, 114 Stat. 1464, which amended the INA

and created the U Visa program.  *See* 8 U.S.C. § 1101(a)(15)(U).  Among other things, this statute provides that an alien petitioner may qualify for a U Visa upon a finding that the alien "has been helpful, is being helpful, or is likely to be helpful" in investigating and prosecuting qualifying criminal activity.  8 U.S.C. § 1101(a)(15)(U)(i); *see* 8 C.F.R. § 214.14(b).  The U Visa program also can extend to the spouse and children of such an alien petitioner.  8 U.S.C. § 1101(a)(15)(U)(ii).

By statute, a maximum of 10,000 U Visas can be issued per fiscal year, 8 U.S.C. § 1184(p)(2)(A):  "The number of aliens who may be issued visas or otherwise provided status as nonimmigrants under section 1101(a)(15)(U) of this title in any fiscal year shall not exceed 10,000."  *Id.*

"USCIS has sole jurisdiction over all petitions for U nonimmigrant status."  8 C.F.R. § 214.14(c)(1).

In light of the statutory cap of 10,000 U Visas per fiscal year, USCIS created by regulation a "waitlist" for petitioners who are determined to be eligible for a U Visa.  Under that waitlist regulation, "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement."  8 C.F.R. § 214.14(d)(2).  Pursuant to that same regulation (but still subject to the statutory annual cap), in the next fiscal year, USCIS would issue U Visas to eligible petitioners who had been placed on the waitlist.  *Id.*  By regulation, "[i]n the next fiscal year, USCIS will issue a number to

each petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible and eligible for U nonimmigrant status.  After U-1 nonimmigrant status has been issued to qualifying petitioners on the waiting list, any remaining U-1 nonimmigrant numbers for that fiscal year will be issued to new qualifying petitioners in the order that the petitions were properly filed." *Id.*

Petitioners who are determined to be eligible for a U Visa also receive certain benefits once they are placed on the waitlist, including work authorization and deferred action.  By regulation, USCIS "will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list" and, "in its discretion, may authorize employment for such petitioners and qualifying family members."  8 C.F.R. § 214.14(d)(2).

Again, by regulation (at least with respect to the waitlist), USCIS processes petitions for U Visas in the order in which they were received, *see* 8 C.F.R. § 214.14(d)(2):  "Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority."  *Id.* Likewise, for petitioners who are determined to be eligible for a U Visa and who are placed on the waitlist, USCIS will adjudicate their petitions and issue them U Visas in the order the petitions were received.  *Id.* ("USCIS will issue a number to each petition on the waiting list, in the order of highest priority, providing the petitioner remains admissible and eligible for U nonimmigrant status.").

Importantly, in 2008, Congress amended the relevant statutory scheme to provide that "[t]he Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U)." 8 U.S.C. § 1184(p)(6).

Based on that legislation, USCIS announced and implemented the "bona fide determination" or "BFD" process. *See* USCIS Policy Alert (June 14, 2021), *available at* https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf.

Under the BFD process, if USCIS conducts a preliminary assessment and determines that a petition for a U Visa is bona fide (meaning that the application has been "made in good faith[,] without fraud or deceit"), and that the petitioner does not pose a security or safety risk and "otherwise merits a favorable exercise of discretion," then USCIS will grant the petitioner BFD status with benefits; USCIS will issue an "employment authorization document" or "EAD" to the petitioner, and grant the petitioner deferred action. USCIS Policy Manual, Volume 3, Part C, Chapter 5.

Since the implementation of the BFD process, petitioners who are determined to be eligible for a U Visa are issued U Visas *either* after being granted BFD status *or* after being placed on the regulatory waitlist for adjudication. *See* USCIS Policy Alert (June 14, 2021), *see supra*. An eligible petitioner who is granted BFD status

is not considered for placement on the regulatory waitlist, and vice versa. *Id*.

With respect to the final adjudication of eligible petitions and the issuance of U Visas (again subject to the statutory annual cap), USCIS has clarified that the agency reviews all petitions in the other that they were received, regardless whether the eligible petitioner was granted BFD status or placed on the regulatory waitlist for adjudication:  USCIS reviews all petitions for "both petitioners placed on the waiting list and petitioners issued BFD EADs, in receipt date order for final adjudication of U nonimmigrant status."  USCIS Policy Alert (June 14, 2021), *see supra*.

So, eligible petitions for U Visas are processed in the order in which they were received, regardless whether the petitioner was granted BFD status or placed on the waitlist.  *See, e.g.*, *Kothari v. Director of USCIS*, No. 3:24 C 50101, 2025 WL 732075, at *3 (N.D. Ill. Jan. 24, 2025) ("In other words, the BFD process has not created a second, separate queue for U visas:  there is one line, but the petitioners in that line may carry either the waiting list designation or the BFD designation. Accordingly, USCIS generally does not consider BFD recipients for placement on the U visa waiting list; these petitioners will simply receive a final adjudication when a U visa becomes available, based on their place in line."); *Orenday Esparza v. Mullin*, No. 1:25-CV-00555-SBP, 2026 WL 872352, at *2 (D. Colo. March 30, 2026) ("USCIS prioritizes all petitions for final adjudication in the order they were

9

received, allegedly to maintain fairness between the petitioners placed on the waiting list and the petitioners issued BFDs and ensure that older petitions maintain priority over newer ones.").

## LEGAL STANDARDS

### A.    Lack of subject matter jurisdiction, standing, injury, redressability, *see* Fed. R. Civ. P. 12(b)(1)

Federal courts are courts of limited jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Pursuant to Rule 12(b)(1), a party can move to dismiss for lack of subject matter jurisdiction.  *Id.*  A court must dismiss an action if it determines at any time that it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *see also University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").

"It is a plaintiff's burden to allege, with particularity, facts necessary to establish jurisdiction."  *Murphy v. Secretary, United States Dep't of Army*, 769 F. App'x 779, 781 (11th Cir. 2019) (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000)); *see also Travaglio v. American Exp. Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013) ("When a plaintiff files suit in federal court, she must allege facts that, if true, show federal subject matter jurisdiction over her case exists.").

"Attacks on subject matter jurisdiction, [under] Rule 12(b)(1), come in two

forms:  facial or factual attack." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021).  "A 'facial attack' challenges whether a plaintiff 'has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'"  *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  A factual attack goes beyond the face of the pleadings, and a court may consider evidence extrinsic from the pleadings.  *Id.*

Even if a defendant does not raise a jurisdictional challenge, the court nevertheless has "an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute."  *City of S. Miami v. Governor*, 65 F.4th 631, 636 (11th Cir. 2023) (quoting *Jacobson v. Florida Sec. of St.*, 974 F.3d 1236, 1245 (11th Cir. 2020)).

In particular, under Article III of the United States Constitution, a federal court only has jurisdiction over "Cases" and "Controversies."  U.S. Const. art. III, § 2.

To "bring suit in federal court, a party must have constitutional standing, which is 'an essential and unchanging part of the case-or-controversy requirement of Article III.'"  *Berrocal v. Attorney Gen. of United States*, 136 F.4th 1043, 1049 (11th Cir. 2025) (quoting *Worthy v. City of Phenix City*, 930 F.3d 1206, 1213 (11th Cir. 2019)); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The party invoking federal subject matter jurisdiction bears the burden of

11

establishing standing.   *Berrocal*, 136 F.4th at 1049.   "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."   *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (quotation marks omitted).

In order to "have standing, an individual plaintiff must have suffered an injury in fact, fairly traceable to the defendant, that the court can redress with an order directed at the defendant."   *Berrocal*, 136 F.4th at 1049 (quoting *Baughcum v. Jackson*, 92 F.4th 1024, 1031 (11th Cir. 2024)).

To adequately allege injury for the purpose of establishing standing, a Plaintiff must show "injury in fact, meaning an injury that is concrete and particularized, and actual or imminent."   *KH Outdoor, LLC v. Clay Cty., Fla.*, 482 F.3d 1299, 1303 (11th Cir. 2007).

And to "satisfy Article III's redressability requirement, '[i]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision'" from the court. *Berrocal*, 136 F.4th at 1051–52 (quoting *Lujan*, 504 U.S. at 561).  Thus, a Plaintiff must show that a decision in her favor would "significantly increase the likelihood that she would obtain relief that directly redresses the injury that she claims to have suffered."   *Berrocal*, 136 F.4th at 1052 (quoting *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc)).

**B.      Failure to state a claim upon which relief can be granted,** *see* **Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 8 requires that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), the court can dismiss a complaint for "failure to state a claim upon which relief can be granted." *Id.*  To avoid dismissal, a complaint must include enough fact allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## DISCUSSION

In light of the specific facts alleged in this case, as well as the controlling statutes, regulations, and caselaw, the court must grant Defendants' motion to dismiss (Doc. 25).  The court lacks jurisdiction over Plaintiffs' claims because Plaintiffs cannot adequately allege the concrete and particularized injury and redressability necessary to show that they have standing to pursue this action.

As a preliminary matter, the facts alleged in the complaint are not in dispute, and Defendants raise a facial attack on this court's subject matter jurisdiction. *See* Doc. 25.  As such, the court accepts as true the facts alleged in the complaint. *See* *Kennedy*, 998 F.3d at 1230.  But, even taking as true those fact allegations (and construing all reasonable inferences in Plaintiffs' favor), Plaintiffs have not alleged

13

facts sufficient to show that they have the standing—i.e., injury and redressability.[2]
*See Murphy*, 769 F. App'x at 781; *Berrocal*, 136 F.4th at 1049.  And, before reaching the merits of the case, this court has an independent duty to ensure its subject matter jurisdiction anyway.  *See City of S. Miami*, 65 F.4th at 636.

### A.    Injury

Plaintiffs have not alleged any injury that is "concrete and particularized."
*See KH Outdoor*, 482 F.3d at 1303.  "For an injury to be particularized, it must affect the plaintiff in a personal and individual way."  *Quinn v. Secretary of St. for Ga.*, 175 F.4th 1309, 1314 (11th Cir. 2026) (quotation marks omitted).  Further, "mere expressions of a desire that the law as written be obeyed do not support an injury-in-fact."  *Id.* at 1315 (cleaned up; quotation marks omitted).

As explained above, Plaintiffs have alleged that—while their petitions for U Visas still are pending—they each have received a bona fide determination (BFD), an employment authorization document (EAD), and deferred action. Notwithstanding those BFDs, EADs, and deferred action, Plaintiffs assert injury based on the fact that they were not placed on the regulatory waitlist for adjudication of their petitions for U Visas.  Plaintiffs argue that, while they each have BFD status, employment authorization, and deferred action, that BFD status "deprives" them of

---

[2] The court need not, and does not, address the traceability element of standing.  *See, e.g.*, *Berrocal*, 136 F.4th at 1049.

the "protections provided by the Wait List Determination."  Doc. 27 at 6 (citing 8 C.F.R. § 214.14(d)(2)).

But Plaintiffs have not alleged or identified any injury in this regard.  And, as a matter of statute and regulation, Plaintiffs cannot do so.  Given their alleged and undisputed BFD status (with employment authorization and deferred action), hypothetical placement on the regulatory waitlist for adjudication of their petitions for U Visas would not confer any additional or different benefit on Plaintiffs.

First, while Plaintiffs assert that petitioners without BFD status cannot get a work authorization (Doc. 1 at 14), it is undisputed that Plaintiffs themselves each have BFD status and work authorization (i.e., an EAD).  Doc. 1 at 4 n.3, 16; Doc. 27 at 4.  Thus, there can be no alleged delay or failure to provide work authorization that could affect these Plaintiffs "in a personal and individual way."  *See Quinn*, 175 F.4th at 1314.

Indeed, Plaintiffs rely on a Sixth Circuit case, *Barrios Garcia v. United States DHS*, 25 F.4th 430 (6th Cir. 2022), for the proposition that this court has jurisdiction over their claims.  But *Barrios Garcia* is factually distinguishable from this case.  In *Barrios Garcia*, the plaintiffs had not yet received BFD status, employment authorization, or deferred action.  *See id.* at 435.  Unlike this case—where Plaintiffs already have received the benefits of BFD status—the court in *Barrios Garcia* could grant the plaintiffs meaningful relief with respect to the alleged delay in their

15

employment authorization under the U Visa program.  *See id.*

Second, given their alleged and undisputed BFD status (with employment authorization and deferred action), Plaintiffs have not alleged or identified any statutory or regulatory protection that they would receive if they were placed on the regulatory waitlist.  Again, there can be no actionable injury because USCIS already has granted Plaintiffs the same work authorization and deferred action that they would receive with placement on the regulatory waitlist.  *See* 8 C.F.R. § 214.14(d)(2) ("USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list.  USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members."); 8 U.S.C. § 1184(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title.").

To be sure, Plaintiffs here *have* identified a mandatory regulatory duty with respect to the waitlist, pursuant to which "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list and receive written notice of such placement."  8 C.F.R. § 214.14(d)(2) (emphasis added).  But, given their alleged and undisputed BFD status (with employment authorization and deferred action), Plaintiffs have not alleged or identified any injury from USCIS's failure to place them on the regulatory waitlist.

Third, Plaintiffs assert that placement on the regulatory waitlist would entitle them to priority consideration for final adjudication of their petitions for U Visas. *See, e.g.*, Doc. 1 at 4, 18, 21.  Stated otherwise, Plaintiffs assert that—either generally and/or specifically as to them—USCIS would adjudicate a petition for a U Visa for an eligible petitioner who was placed on the regulatory waitlist sooner than USCIS would if that same petitioner had received BFD status.  But that suggestion cannot show any "concrete and particularized" injury (*see KH Outdoor*, 482 F.3d at 1303), because there is no factual or legal support for Plaintiffs' assertion.

Rather, with respect to the adjudication of petitions and the issuance of U Visas, USCIS has been clear that petitioners who are placed on the regulatory waitlist are not prioritized over petitioners who received BFD status.  USCIS reviews all petitions, "both petitioners placed on the waiting list and petitioners issued BFD EADs [employment authorization documents], in receipt date order for final adjudication of U nonimmigrant status."  *See* USCIS Policy Alert (June 14, 2021), *see supra*.  So, Plaintiffs have not shown that they have missed out on any advantage as to timing or priority that hypothetically would come with placement on the regulatory waitlist but not with their BFD status.

Fourth, Plaintiffs argue that "filing a U visa petition triggers statutory and regulatory entitlements—including waiting list adjudication, bona fide determinations, deferred action, and work authorization—that cannot be arbitrarily

withheld."    Doc. 27 at 1.    But (again), Plaintiffs have received each of these "entitlements" (*see id.*), except for placement on the regulatory waitlist, and Plaintiffs have not identified any injury that they sustained by receiving BFD status instead.

Fifth, Plaintiffs assert injury because BFD status "is a policy creation and can be eliminated in USCIS's sole discretion."  Doc. 27 at 6.  But, where a plaintiff seeks prospective relief for a potential, future injury, the plaintiff must show that the "threatened injuries are certainly impending."  *City of S. Miami*, 65 F.4th at 636 (quotation marks omitted); *accord KH Outdoor*, 482 F.3d at 1303 (injury must be "actual or imminent").   Here, Plaintiffs have made no such showing; they just speculate that something at the agency potentially could happen, and that they potentially could lose their BFD status as a result.  In any event, the waitlist process itself is a creation of regulation, not of statute, that USCIS—just the same— theoretically could eliminate or change.  *See* 8 C.F.R. § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement.").  While no statute calls for the waitlist process, Congress did call for the BFD process in 8 U.S.C. § 1184(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U).").

18

Likewise, sixth (and finally), Plaintiffs cannot show injury based on allegations regarding "fears" that, "at any moment, [they] could be removed from the United States, particularly under the current administration." Doc. 1 at 14–15. Any such fears are too speculative to show that the "threatened injuries are certainly impending." *See City of S. Miami*, 65 F.4th at 636.

## B.      Redressability

To the extent that Plaintiffs have alleged some conceivable injury, there still is no injury that "the court can redress with an order directed" at Defendants. *See Berrocal*, 136 F.4th at 1049.

Plaintiffs allege that they have been "deprived of the opportunity to obtain critical immigration relief." Doc. 1 at 3. Plaintiffs allege that they are "entitled to receive a decision on their respective Petitions or, in the alternative, placement on the U visa waitlist allowing for their Petitions to be prioritized if their case is still pending at the beginning of the next fiscal year." Doc. 1 at 4; *see also* Doc. 1 at 18 (stating that USCIS has adequate information "to complete the adjudication of [Plaintiffs'] respective Petitions within the current fiscal year or in the alternative prioritizing their Petitions at the beginning of the next fiscal year by placing them on the U visa waitlist").

Plaintiffs also allege that the failure to adjudicate their petitions for U Visas has created uncertainty that "exacerbate[s]" emotional distress and makes it difficult

19

to support their children and grandchildren. Doc. 1 at 13–14. Martinez Flores alleges that the failure to adjudicate her petition for a U Visa negatively impacts her "access to quality healthcare." Doc. 1 at 14–15.

Plaintiffs allege further that "[g]aining lawful immigration status would restore a sense of safety, permanence, and hope for the future," and allow more stability and opportunity. Doc. 1 at 15. Plaintiffs allege that, even though they have received BFD status, employment authorization, and deferred action, "recipients of actual U visas are entitled to meaningful legal rights and benefits" to which Plaintiffs are not currently entitled. Doc. 1 at 20.

Plaintiffs request "an order mandating a time certain to adjudicate Plaintiffs' respective Petitions," or, in the alternative, placement "on the U visa waitlist for prioritization of their respective Petitions during the next fiscal year." Doc. 1 at 21. Plaintiffs also request immediate adjudication of their petitions for U Visas. Doc. 1 at 21. Further, Plaintiffs request declaratory relief, including declarations that "USCIS's failure to timely implement the U visa program from 2000 to 2009 constitutes unlawful agency inaction, causing unjustified harm to pre-2009 victims of qualifying crimes, and entitles Plaintiffs to retroactive relief," and that "USCIS's unreasonable delays in processing Plaintiffs' U visa Petitions violates the Administrative Procedure Act, 5 U.S.C. § 706, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution." Doc. 1 at 22.

20

In this regard, Plaintiffs cannot show redressability because the statutory annual cap on U Visas mandated by Congress—along with, in part, USCIS's regulatory scheme governing the waitlist for adjudication—forecloses this court from entering an order that could grant Plaintiffs any relief.  Plaintiffs allege that they are entitled to immediate adjudication of their petitions for U Visas, or adjudication in a time certain, and that their lack of lawful immigration status causes them injury, including distress and lack of access to quality healthcare.  *See* Doc. 1 at 3–4, 13–15.  Plaintiffs argue that they "invoke Congress's intent that U visa petitioners receive timely adjudication, not indefinite delay."  Doc. 27 at 2.

But (as explained above), by statute, the number of U Visas issued "in any fiscal year shall not exceed 10,000."  8 U.S.C. § 1184(p)(2)(A).  And, by regulation (and policy), USCIS processes the petitions for U Visas in the order that they were received.  *See* 8 C.F.R. § 214.14(d)(2) ("Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority.  In the next fiscal year, USCIS will issue a number to each petition on the waiting list, in the order of highest priority . . . ."); USCIS Policy Alert (June 14, 2021), *see supra* (USCIS reviews all petitions for "both petitioners placed on the waiting list and petitioners issued BFD EADs [employment authorization documents], in receipt date order for final adjudication of U nonimmigrant status").

Plaintiffs allege that, on account of this statutory annual cap, there is a backlog

of petitions for U Visas that USCIS must adjudicate. Doc. 1 at 3, 4 n.3. Defendants assert, and for purposes of this motion it is undisputed, that USCIS still is processing petitions for U Visas that were filed on or before April 30, 2017, and that there are at least 59,000 petitions for U Visas that have not yet been adjudicated and that were filed before Plaintiffs filed their petitions. *See* Doc. 25 at 11–12 (citations omitted); Fed. R. Evid. 201; *see also, e.g.*, *Calderon-Ramirez v. McCament*, 877 F.3d 272, 276 (7th Cir. 2017) (stating in 2017 that, "since 2009, the U-Visa backlog has increased from 21,138 to 177,340 pending applications"). Plaintiffs allege that Martinez Flores filed her petition for a U Visa in June 2019, and that Baldovinos filed his petition for a U Visa in September 2023. Doc. 1 at 3, 15–16.

Thus, given the statutory annual cap on U Visas, and the backlog for adjudication of pending petitions for U Visas that were filed before Plaintiffs' petitions, the court cannot order USCIS to adjudicate Plaintiffs' petitions and issue them U Visas. Even if the court "ordered USCIS to issue [the] [59],000 U-visas" to clear the backlog and adjudicate Plaintiffs' petitions, "the agency would not be able to do so because of the annual statutory cap." *See Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citation omitted) (finding persuasive a district court holding on redressability, where the district court had reasoned that, "even if it ordered USCIS to issue 80,000 U-visas, the agency would not be able to do so because of the annual statutory cap," and that this reality, "combined with the fact

22

that the statutory cap had already been reached for the year in question, meant that there were simply no U-visas to issue, much less 80,000" (citations omitted; cleaned up)).  Because "the agency lacks the statutory authority to give plaintiff the relief sought" (*see id.* at 854), this court cannot order USCIS to adjudicate Plaintiffs' petitions for U Visas.

Furthermore, an agency "lacks the discretion to decline to follow" its own regulations.  *See Kanapuram v. Director, USCIS*, 131 F.4th 1302, 1308 (11th Cir. 2025).  Because USCIS processes petitions for U Visas in the order in which they were received (*see, e.g.*, 8 C.F.R. § 214.14(d)(2)), this court cannot order that Plaintiffs cut the line—i.e., order USCIS to adjudicate Plaintiffs' petitions for U Visas immediately or in a time certain, ahead of those unadjudicated petitions that were filed before Plaintiffs' petitions—without ordering USCIS to violate its own regulation and policy.  *See, e.g.*, *Salinas Ramirez v. Noem*, No. 4:25-CV-04085-SLD-RLH, 2026 WL 579500, at *4 (C.D. Ill. March 2, 2026) ("Because it would violate binding statutes and regulations, the Court lacks the authority to order USCIS to grant more than 10,000 principal U Visas per year, grant [the plaintiff] a U Visa before those on the waiting list, or place him on the waiting list before those who applied before him.").

Because this court cannot order USCIS to violate the statutory annual cap on U Visas or USCIS's own regulation and policy on adjudicating petitions for U Visas

in the order in which they were received, no order from this court can grant Plaintiffs

lawful immigration status (*see* Doc. 1 at 15), mandate immediate adjudication of

Plaintiffs' petitions for U Visas (*see* Doc. 1 at 4–18), mandate prioritization or a time

certain for adjudication of Plaintiffs' petitions (*see* Doc. 1 at 4, 18, 21), provide

additional immigration relief that Plaintiffs have not already received given their

BFD status (*see* Doc. 1 at 3), relieve Plaintiffs' uncertainty (*see* Doc. 1 at 12–15), or

make it easier for Plaintiffs to support their children and grandchildren and gain

better access to healthcare (*see* Doc. 1 at 13–15).  Accordingly, Plaintiffs cannot

allege or show that it would be "likely" that their injury related to the lack of a U

Visa, or the delay in receiving a U Visa, would be "redressed by a favorable

decision" from this court.  *See Berrocal*, 136 F.4th at 1051–52.[3]

To the extent that Plaintiffs instead generally allege that Defendants took too

---

[3] Some caselaw appears to characterize such a conclusion as a ruling not that the plaintiffs lack standing for failure to allege redressability under Rule 12(b)(1), but that the plaintiffs fail to state a claim upon which relief can be granted under Rule 12(b)(6).  *See, e.g.*, *Shahi v. United States Dep't of State*, 33 F.4th 927, 930 (7th Cir. 2022) (discussing *Taylor*, 875 F.3d 849, and reasoning that the "relief was forbidden by statute," and that the "opinion characterized this as a lack of standing, because the limit on the annual number of U visas meant that the plaintiffs' injury was not redressable," but that "plaintiffs lose all the time without having their suits dismissed for lack of jurisdiction," and that "a court could [have] redress[ed] plaintiffs' injury by ordering the State Department to adjudicate their applications.  The problem [wa]s not impossibility but the lack of an entitlement. . . . the plaintiffs in [*Taylor*] lost on the merits").  While this procedural issue arguably is debatable and interesting, again (as explained above), the court has a threshold duty to ensure that it has subject matter jurisdiction before reaching the merits of any claim.  *See City of S. Miami*, 65 F.4th at 636.

long to promulgate regulations for the issuance of U Visas and for the BFD process (*see* Doc. 1 at 3, 12), Plaintiffs still cannot show redressability.  A plaintiff cannot "rely on 'a series of speculative events' to establish redressability." *Berrocal*, 136 F.4th at 1053 (quoting *Baughcum*, 92 F.4th at 1034).  Rather, a plaintiff must show that it is more than "merely . . . possible" that an order would grant relief from her injury.  *Id.*  "In order for an injury to be redressable, 'it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *KH Outdoor*, 482 F.3d at 1303 (quoting *Lujan*, 504 U.S. at 561).  Here, there is no way that an order from the court—aside from an order to violate the controlling statutes and regulations, *see supra*—could redress any theoretical wrong from the alleged delay in promulgating regulations.  Among other things, Congress mandated only a maximum for the number of annual U Visas, and *not* any minimum.  *See* 8 U.S.C. § 1184(p)(2)(A) (the number of U Visas issued "in any fiscal year *shall not exceed* 10,000" (emphasis added)).  Nevertheless, Plaintiffs' suggestion with respect to injury from Defendants' alleged delay in promulgating regulations necessarily presupposes that some hypothetical, alternative regulations would have been more favorable to petitioners generally (and Plaintiffs specifically), in that USCIS would have issued more U Visas—e.g., that USCIS would have or should have hit the statutory maximum for U Visas for each fiscal year beginning at the earliest conceivable opportunity.  But that suggestion is speculative, and any potential

redress that the court in this case might fashion based on that premise would be doubly speculative.

*     *     *

In sum, Plaintiffs have not alleged or shown any concrete and particularized injury that an order from this court could redress.  As a result, the court must dismiss the complaint because Plaintiffs lack standing and this court lacks jurisdiction.

<h2 style="text-align:center">CONCLUSION</h2>

For the reasons stated above, Defendants' motion to dismiss (Doc. 25) is **GRANTED**.  This action is **DISMISSED WITHOUT PREJUDICE**.[4]  The court separately will enter final judgment.

**DONE** and **ORDERED** this June 26, 2026.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE

---

[4] Dismissal on jurisdictional grounds is without prejudice.  *See Gardner v. Mutz*, 962 F.3d 1329, 1343 n.11 (11th Cir. 2020).